Jerome **BRODSKY** and **Jack Hazelcorn** and **Robert White** a/k/a **Robert Randall**, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 14822.

United States Court of Appeals, Fifth Circuit.

Dec. 29, 1954.

Rehearing Denied Feb. 18, 1955.

Clarence J. Brown, George Nicholas, Warren C. Rose, Henry R. Carr, Miami, Fla., for appellants.

James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This is an appeal by three defendants from a judgment of guilty on an indictment charging them with the substantive offense of transporting a motor vehicle in interstate commerce, and also with a conspiracy to violate the substantive offenses.

Each of the defendants was indicted on all of the six counts contained in the indictment. Count one, charging them with transporting the motor vehicle from New York City to Miami, Florida, with knowledge that it had been stolen, was dismissed as to defendants Jerome Brodsky and Jack Hazelcorn, but defendant Robert Randall was found guilty thereon. Count two was dismissed as to all defendants. Count three, charging all of the defendants with knowingly transporting the stolen vehicle in foreign commerce from Miami, Florida, to Havana, Cuba, was dismissed as to Hazelcorn, and the jury found defendants Randall and Brodsky guilty as therein charged. The remaining counts set forth a conspiracy to accomplish the substantive offenses. Under count four, the jury convicted Randall and Hazelcorn of a conspiracy to transport the stolen automobile from New York to Miami, and that count was dismissed as to Brodsky. Count five was dismissed as to all defendants. In count six, all of the defendants were charged with a conspiracy to transport the stolen motor vehicle from Miami to Havana with knowledge that it had been stolen, and the jury found all of the defendants guilty on this count. The primary question is whether there was sufficient evidence to support the several verdicts of the jury.

The uncontradicted evidence showed that the motor vehicle, a late model Cadillac, was stolen on March 30, 1953, in New York City. On April 3, 1953, the three defendants appeared at Orange Motor Company in Miami, Florida, and offered the stolen car for sale. There was evidence to show that Robert Randall, accompanied by Jack Hazelcorn, drove the car from New York to Miami. Randall, using the alias of White, represented himself to be the owner of the stolen car, and presented as proof of ownership a forged title certificate containing fictitious business and residential addresses for himself; and the title certificate had on it a false registration number and false validating stamp. The evidence further showed that the motor number had been altered and that the identification tag had been partly destroyed. When the used car dealer noticed the unusual appearance of the motor number and the other suspicious circumstances, he informed the defendants that he thought the car was a stolen one. The automobile dealer in the presence of the defendants, called the police to report the stolen car. The de-

fendants drove away in the stolen car before the police arrived, and, as they were about to leave, the defendant Hazelcorn, using the alias of Parker, stated that they would return to New York to find the man from whom they had bought the car and get back their money.

Brodsky, a Miami Beach policeman, had previously brought cars to Orange Motor Company to be sold, and on each occasion was paid a commission. The evidence showed that he sent a telegram to New York on April 3rd inquiring as to the registration of the stolen car. This telegram was sent after he was told by the used car dealer that the car was stolen. A reply received on April 6th requested more information, since the registration of the car could not be checked on the information that he had furnished. Brodsky sent the information requested, but he did not await a reply to the second telegram before he commenced the alleged offenses. On April 6th, Randall and Brodsky bought round-trip tickets to Cuba, and also purchased a one-way ticket for the stolen car. At the time the tickets were purchased, Randall claimed ownership of the car and made the necessary arrangements for its transportation. Brodsky, dressed in his police uniform, accompanied Randall to the loading dock and saw that the car was loaded upon the ferry.

The stolen automobile was seized in Cuba and shipped back to Miami by the American Consulate. When Randall and Brodsky returned to Miami from Havana, they were met at the airport and arrested. Shortly thereafter Hazelcorn was arrested in New York City. At the time of his arrest, he had on his person a copy of the telegram he had apparently sent to Brodsky, under the name of Allan Brodsky, stating: "Mother ill. Can you come." This telegram was sent in connection with Brodsky's alibi for being off from work on April 6th and thereafter. Brodsky's mother testified that she was not sick and did not have a son named Allan.

None of the defendants offered to testify. Brodsky offered two character witnesses, and Randall's wife testified on his behalf. She said that Randall bought the car for $2,800 from some man known to her only as Charley. She did not know where this man could be located, and had not seen him since the alleged sale. From the facts and circumstances in evidence, the jury could fairly and reasonably infer, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, the existence of the conspiracy charged in the indictment and the participation by the three defendants therein. The car was shown to have been stolen; the defendants were told that it appeared to be stolen; and the actions of the defendants in regard thereto were not consistent with any hypothesis of innocence.

Hazelcorn contends that there was no evidence to connect him with either conspiracy, but we think that the jury could have inferred his connection with both of them from several facts. Hazelcorn was with the other two defendants when they attempted to dispose of the stolen car, and his statement to the car dealer that they would take it back and find the man from whom they had bought it tends to show that he was connected with the transportation of the car from New York to Miami. As to the conspiracy to transport the stolen motor vehicle to Cuba, he and Randall were registered at several hotels in Miami while Randall had the car with him, and the fact that the copy of the telegram was found on him after his arrest is certainly a connecting link that evidences his guilt of a criminal conspiracy. He was a participant in all of the activities with regard to the attempted sale of the stolen automobile, and, from the circumstances, the jury were justified in finding, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, that he knew the car was stolen. Hazelcorn attacks the legality of his arrest, and contends that the incrimi-

nating evidence found on his person should be suppressed. The arrest being lawful, the search incident thereto was also lawful. The arresting officer had knowledge that the car was stolen; that Hazelcorn had accompanied Randall to Miami in the car; that he had received a telephone call from Havana; and that his wife sent money to a Bob White (Randall's alias) in Havana. Furthermore, the agent was advised before the arrest that the United States Attorney had authorized the filing of a complaint against Hazelcorn. The arresting officer undoubtedly had reasonable cause to believe that the defendant had committed a felony. Brubaker v. U. S., 6 Cir., 188 F.2d 894; United States v. Bell, D.C., 48 F.Supp. 986.

The evidence was also sufficient to support the verdict of the jury as to Brodsky. He was told by the automobile dealer that the Cadillac was a stolen automobile. Although he knew from the examination of the motor number by the used car dealer that the dealer thought the car had been stolen, and that the police were being notified, he failed to await the arrival of the police, but left the dealer's place and wired the motor vehicle bureau of New York, using the suspected number and not the altered number. The defendant received a reply from New York that he had not furnished sufficient information, and he proceeded to send the desired information, but he failed to await a reply to his telegram. He then got off from work on the false ground of his mother's illness, so that he could help transport the stolen car out of the country. All of these actions tend to exclude a reasonable hypothesis of innocence. Among his several assignments of error, he urges that the court erred in overruling his motion for a mistrial when the attorney for the United States, in his closing argument, stated: " * * how does he explain what he was doing there? No explanation for those activities has been offered, and under the law the defendant is not required to come in here and testify, but from other sources we have no explanation and I don't think we will get an explanation." The government's attorney argues that the statement complained of was inadvertently made, and that the trial judge emphatically instructed the jury that a defendant had an absolute privilege to testify or not, and that no inference might be drawn from his failure to do so. It is clear that no error was intentionally committed, since the attorney explained in his argument to the jury that he meant an explanation from other sources, such as cross-examination and examination of character witnesses, and not from the defendant himself; and, if an error was inadvertently committed, it was cured by the court and counsel, resulting in no harm to the appellants. In our opinion, the judgment was correct and should be affirmed.

Affirmed.